IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| CHRISTINA SAPP, | : |
| | : |
|     Plaintiff, | : |
| | : |
| v. | :   Civil Action No. 5:09-CV-048 |
| | : |
| FIRSTFITNESS INTERNATIONAL, INC., | : |
| | : |
|     Defendant. | : |

## ORDER

This matter comes before the Court on Defendant FirstFitness International, Inc.'s Motion to Transfer Venue (the "Motion") and its Memorandum of Law in Support (the "Brief") (Doc. 14) (the "Motion"). For the reasons set out below, the Motion is GRANTED.

## FACTUAL BACKGROUND

This case has a long history spanning several courts, states and federal districts.

FirstFitness International, Inc. ("FF") is a Texas corporation with its principal office in Carrollton, Texas. (Def.'s Br. 6.) FF markets, sells and distributes various nutritional and dietary foods and supplements, which it sells exclusively through its network of authorized distributors and on FF's website. (Def.'s Br. 2.) Plaintiff, Christina Sapp, was formerly an authorized distributor of

1

FF products before she terminated her distribution agreement with FF.  (Def.'s Br. 2-3.)  FF filed a complaint against Sapp (the "Texas complaint") in the United States District Court for the Northern District of Texas, Dallas Division (the "Texas court").[1]  Among the various claims for relief in the Texas complaint, FF asked the Texas court for injunctive relief to prevent Sapp from the unauthorized use of certain internet domain names and the unauthorized use of certain intellectual property of FF on "any website."  (FF's Texas Compl. ¶ 65.)

Before trial, FF and Sapp entered into a Settlement Agreement (the "Agreement") and Agreed Permanent Injunction and Final Judgment (the "Injunction").[2]  Germane to this litigation, Sapp agreed to stop permanently the use of various terms such as 1st Fitness, FirstFitness, and Zavita, among others, "in the content of any website, on eBay, or otherwise on the Internet or in any printed matter," and "permanently stop using the name, photograph, likeness, or other identifying characteristic of all FirstFitness distributors and distributorships in connection with the advertisement, sale, or purchase of any product, without the distributor's written consent."  (Inj. ¶¶ 1(b) and (f).)  Additionally, the Texas court, FF and Sapp agreed that the Texas court would "retain jurisdiction of the parties for enforcement of the terms of [the Injunction]." (Inj. ¶ 3.)

---

[1] FF also asserted claims against Sapp's business associate, Fredrick Thomas, in the Texas Complaint.  Thomas is not a party to this action.

[2] Thomas is also a party to the Agreement and the Injunction.

On February 6, 2009, Sapp filed her original complaint, jury demand and application for permanent injunctive relief (Doc. 1) (the "Complaint") in this Court,[3] thus initiating this litigation.  In the Complaint, Sapp prayed for: (a) money damages for FF's alleged tortious interference with business based on FF's use of the VeRO (verified rights owner) program to terminate certain auctions initiated by Sapp to sell FF products on eBay, (Sapp Compl. ¶ 20); (2) a declaratory judgement affirming Sapp's right to lawfully sell FF products on eBay without further interference by FF, (Sapp Compl. ¶ 36); (3) a permanent injunction enjoining FF "from any action or conduct which interferes in the Plaintiff's business of reselling genuine FirstFitness products," (Sapp Compl. ¶ 39); and (4) money damages for deceptive and unfair trade practices based on FF's use of the VeRO program to halt eBay auctions, (Sapp Compl. ¶¶ 41-47).  In its Answer (Doc. 5), FF alleged that the doctrines of res judicata and collateral estoppel barred any relief that could be afforded to Sapp.   (FF Answer 1-2.)  Additionally, FF alleged that all of the claims Sapp raised in the Complaint were barred because they were compulsory counterclaims that should have been asserted in the Texas case.  (FF Answer 2.)

Shortly after FF filed its answer in this case, FF filed, in the Texas case, its

---

[3] Plaintiff also filed, contemporaneously with the Complaint, a Motion for Permanent Injunction (Doc. 2).  Because this Court transfers this case to the Texas court, it is not necessary for this Court to address this Motion.

Motion for Show Cause Hearing to Determine Why Defendants Frederick Thomas and Christina Sapp Should Not Be Held In Contempt (the "Contempt Motion").  In the Contempt Motion, which is still pending in the Texas court, FF asks the Texas court to hold Sapp in contempt, and to award FF money damages as well as its fees and expenses.  (Contempt Mot. 5-6.)  In support of the Contempt Motion, FF alleges violations of the Agreement and the Injunction by continued sales on eBay and by the filing of this action by Sapp for money damages and injunctive relief.  (Contempt Mot. 1-5.)

Finally, FF filed this Motion with this Court on April 16, asking this Court to transfer this case to the Texas court.

## DISCUSSION

"For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  Determining whether or not to exercise its discretion and transfer a case to another venue requires that a court address two primary issues: whether the case could have been brought in the transferee court, and whether the interests of justice would be served by a transfer of venue.  Id.  See also First Fed. Sav. and Loan Ass'n of Warner Robins, Georgia, v. Berger, 672 F.Supp. 1454, 1456 (M.D. Ga. 1987).

In resolving the first issue, a court must consider whether jurisdiction, venue and service are appropriate in the transferee court.  Martin v. South

Carolina Bank, 811 F.Supp. 679, 683 (M.D. Ga. 1992). This case is certainly one that could have been brought in the Northern District of Texas. Federal jurisdiction exists here because of the complete diversity of the citizenship of the parties. 28 U.S.C. § 1332. Sapp is a citizen of Georgia and FF is a citizen of Texas, and the matter in controversy exceeds $75,000.00. Alternatively, the federal courts have subject matter jurisdiction over this case based on the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. § 1331 federal question jurisdiction. Additionally, personal jurisdiction, venue and service are all proper with regard to FF in the Northern District of Texas because Defendant has its principal place of business there. Del Monte Food Produce Co. v. Dole Food Co., Inc., 136 F.Supp.2d 1271, 1281-82 (S.D. Fla. 2001). Therefore, this case is one that could have been brought in the Northern District of Texas.

    Do the interests of justice favor transfer? The Court recognizes three considerations with regard to the balancing of interests for transfer: first, that the Court must analyze a motion to transfer on a case-by-case, individualized basis, Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); second, that the burden is on the moving party to establish a balance of factors in favor of the transfer, In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989); and third, that courts should accord a plaintiff's choice of venue considerable deference, In re Ricoh, 870 F.2d at 573. Nevertheless, the plaintiff's choice of forum is still "only one of several factors" to consider. Stewart Org., 487 U.S. at 31. See also First Fed., 672

F.Supp. at 1456.  Among the host of factors a court should consider in determining whether the interests of justice require transfer, the two most important are the location of the key witnesses and whether other actions invoking the same or substantially similar subject matter are pending in the transferee district.  First Fed., 672 F.Supp. at 1456-57; Samsung, 386 F.Supp. at 718 and 721-22.

Regarding the location of key witnesses, FF argues that five of its key witnesses, who have knowledge of and are likely to testify about Plaintiff's actions, Plaintiff's relationships with other distributors, the means by which Plaintiff acquired Defendant's products, the Plaintiff's websites, the damages suffered by Defendant, and the Settlement Agreement and Injunction in the first case, are all located in the Northern District of Texas.  (Def.'s Br. 11.)  Sapp does not challenge FF's assertion regarding witnesses, nor does Sapp argue that her witness(es) would be similarly inconvenienced by a transfer.  Thus, it appears that the more appropriate venue with regard to key witnesses is in the Northern District of Texas.

Another crucial consideration is whether related actions are pending in the transferee district.  Samsung, 386 F.Supp. at 721.  If there are such pending actions, "the interest of justice is generally thought to 'weigh heavily' in favor of transfer" because litigating the actions in the same court "avoids duplicative litigation where one court has already invested 'substantial time and energy' in a

case." Id. at 721-22.  The interests of justice "strongly support a transfer" in cases, such as this one, where the transferee court "reviewed and decided the prior litigation between the parties . . ., especially [when the] case turns on the preclusive effect of that court's judgment."  Weinberger, 391 F.Supp.2d at 245.  See also Nolte v. Bellsouth Telecommunications, Inc., 2007 WL 2253561, at *3 (N.D. Ala. 2007) ("The court finds that, because prior similar litigation has occurred and the present action turns on the preclusive effect of [the transferee court's] Order [dismissing the prior case], the interests of justice would be served by transferring this case to the court that reviewed and decided [the prior case]."); Samsung, 386 F.Supp.2d at 722 ("[W]here a party has previously litigated a case involving similar issues and facts[,] 'a court in that district will likely be familiar with the facts of the case.  As a matter of judicial economy, such familiarity is highly desirable."); Reiffin v. Microsoft Corp., 104 F.Supp.2d 48, 58 (D.D.C. 2000) ("'To permit a situation in which two cases involving . . . the same issues are simultaneously pending in different District Courts leads to the wastefulness of tim[e], energy and money that § 1404(a) was designed to prevent.").

 In this case, FF argues that all of the claims Sapp asserts in her Complaint were raised in one form or another in her answer to FF's Texas complaint, and thus are precluded.  (Def.'s Mot. 8.)  FF further argues that, to the extent Sapp did not raise these claims in the previous litigation, they were compulsory counterclaims that should have been raised in the previous litigation.  (Def.'s Mot.

7

9.) Sapp obviously disputes this and argues that the issues she raises are distinct from those raised in the Texas case. (Pl.'s Resp. 2.)

In addition to the concerns about claim preclusion, res judicata and compulsory counterclaims, and perhaps more significantly, FF has filed a Contempt Motion against Sapp in the Texas court involving the claims Sapp asserts in this litigation. What is more, the Texas court, in the Injunction, explicitly retained jurisdiction of "the parties for enforcement of the terms of [the Injunction.]" (Inj. ¶ 3.)

In light of all the foregoing, this Court believes that the Texas court is in a better position to determine which claims were raised in the litigation before it, and what issues were decided in the Injunction. The interests of justice would be better served by transferring this case to the court most familiar with the previous litigation, and with a motion addressing the same issues pending before it.

For the above reasons, Defendant's Motion to Transfer Venue is GRANTED, and this action is transferred to the United States District Court for the Northern District of Texas, Dallas Division.

**SO ORDERED**, this the 16th day of September, 2009.

/s/ Hugh Lawson
HUGH LAWSON, JUDGE

jch